This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Gerald Waterbeck (hereinafter "Waterbeck"), appeals the trial court's decision finding him guilty of violating R.C. 959.13(A)(1), a misdemeanor of the second degree. Because we conclude: 1) Waterbeck's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence; 2) he was not entitled to the affirmative defense found in R.C. 955.28(A); and, 3) the trial court used the proper standard of proof when finding him guilty, we affirm the decision of the trial court.
Waterbeck lived in the same home for thirty years when, in September 1998, he began to have a stray dog problem when one of his poodles was maimed and killed by a stray rottweiler. The problem abated until April 1999, when stray dogs entered his property once more. He continually chased the dogs off the property and never fed the dogs. On April 20, 1999, Waterbeck found a German shepherd and another dog in his back yard being aggressive and attacking his remaining poodle. His son called the dog warden, who attempted but failed to catch the stray dogs. That night, Waterbeck was awoken at three in the morning by his crying dog. He saw two dogs in the yard again, one of which was the German shepherd and the other was a dog which had previously attacked him. He chased these dogs away.
The next morning, on April 21, 1999, Waterbeck was getting ready to leave the house when he found the German shepherd in his back yard again. The dog was bigger than his and was biting his into submission. Waterbeck retrieved a metal rod with a weighted end and entered his back yard. The German shepherd was in his dog's dog house and, when it saw Waterbeck, it started to come out of the dog house and toward Waterbeck. Waterbeck then began to beat the dog.
At this point, the dog cried out. Waterbeck's neighbor looked out her window when she heard the dog's cry and saw Waterbeck swing the rod down, but she didn't see what he was swinging at. She entered her backyard, saw the injured dog, and asked if the dog was dead. Waterbeck responded, "It will be," and hit the animal again multiple times. He claims that after the first blow he wanted to kill the dog so it would not suffer. The neighbor, who during the previous month had been feeding the stray on Waterbeck's property without Waterbeck's knowledge, called Animal Control. The police arrived at Waterbeck's residence shortly thereafter with Animal Control and charged Waterbeck with Cruelty to Animals, a violation of R.C. 959.13(A)(1). The matter proceeded to a bench trial where the trial court found Waterbeck guilty and sentenced him accordingly.
Waterbeck raises three assignments of error:
 "Appellant's conviction for cruelty to animals should be reversed as the evidence supporting the trial court's finding of guilt was insufficient as a matter of law to prove the charge beyond a reasonable doubt and the conviction is against the manifest weight of the evidence."
 "The trial court erred, as a matter of law, in finding Appellant guilty of animal cruelty as said conviction is expressly precluded by the provisions of Ohio Revised Code 955.28."
 "In finding Appellant guilty, the trial court used an incorrect standard of proof and, therefore, Appellant's conviction must be reversed."
In his first assignment of error, Waterbeck makes two different arguments: 1) the trial court erred in not granting his Crim.R. 29(A) motion for acquittal at the close of the State's case, and 2) the trial court's ultimate finding was against the manifest weight of the evidence.
Crim.R. 29(A) provides a court shall, upon its own motion or the defendant's motion, after the evidence on either side is closed, order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of such offense or offenses. When reviewing a claim of insufficient evidence pursuant to a Crim.R. 29(A) motion for acquittal, the relevant inquiry is whether any rational person, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. Jacksonv. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789,61 L.E.2d 560, 573; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This is a question of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546. The verdict will not be disturbed unless the reviewing court finds reasonable minds could not reach the conclusion reached by the trier of fact. Id. at 273, 574 N.E.2d at 503.
Waterbeck was convicted of violating R.C. 959.13(A)(1) which provides:
 "No person shall * * * [t]orture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water * * *."
The definition of "torture" in R.C. 1717.01(B) applies to prosecutions under R.C. 959.13. State v. Dresbach (1997), 122 Ohio App.3d 647, 650,702 N.E.2d 513, 515-516. R.C. 1701.01(B) provides:
 "`Cruelty,' `torment,' and `torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief."
To be found guilty under R.C. 959.13(A)(1), the defendant must be found to have acted recklessly. See State v. Lapping (1991), 75 Ohio App.3d 354,358-59, 599 N.E.2d 416. A person acts recklessly when he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature, with heedless indifference to the consequences. R.C. 2902.22(C).
At trial, Waterbeck's neighbor, Nancy Cuevas, testified that on April 21, 1999, she was in her house when she heard an animal cry out. She looked out of her window and saw Waterbeck hitting something with what looked like a shovel, although she could not tell what he was hitting. Mrs. Cuevas then went outside and saw Waterbeck standing over an injured dog. She asked Waterbeck what he was doing and if the dog was dead. Waterbeck answered, "He will be," and that he was going to "get the other stray also," then hit the dog more than one time and ordered his son to get a garbage can. The beating left a puddle of blood along with blood and pieces of bone and flesh splattered around Waterbeck's backyard. Nancy Cuevas's daughter, Christy Cuevas, testified Waterbeck told her he "would have shot [the dog], but since [he had] no gun, [he] beat it to death." Finally, the dog was clearly identified as being dead. At the time of Waterbeck's motion for acquittal, it was undisputed he had killed the animal. The remaining question was whether Waterbeck had unnecessarily or cruelly beat, or needlessly killed the dog.
In State v. Tiber (May 17, 1990), Belmont App. No. 88-B-28, unreported, this Court was faced with a similar factual situation. InTiber, the defendant's neighbor heard a dog screaming and saw the defendant hitting the dog with a rake as hard as he could. He then saw the defendant retrieve a shovel and continue hitting the dog with the shovel. After this, the defendant tied the dog with a noose. A friend of the defendant then visited him and saw the dog lying in the defendant's garage with a noose around its neck. The dog moved and the defendant struck the dog with a shovel, put it in a bucket, and slid it through the back window of the garage. The defendant told his friend not to tell anyone about the dog and that he had killed it because he was tired of its barking. This court found there was sufficient evidence to support a finding both that the defendant unnecessarily beat the dog and needlessly killed the dog. "In a circumstance such as this, if the original injury to the dog was accidental, it would be reasonable that a person would retrieve the injured animal and attempt to get help for it instead of pursuing the animal with a shovel and beating it." Id. at 2.
The present case is fundamentally the same as Tiber. Waterbeck evidenced an intention to kill the dog and beat the dog to death with a shovel. There was sufficient evidence to show Waterbeck unnecessarily beat and needlessly killed the dog because it was a stray. As this court pointed out in Tiber, regardless of how the dog originally came to be injured, the reasonable course of action would have been to help the injured animal rather than beating it to death. Thus, the trial court properly denied Waterbeck's Crim.R. 29(A) motion for acquittal.
Waterbeck's second argument within this assignment of error is that his conviction was against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Thompkins, supra at paragraph two of the syllabus. When reviewing whether a conviction was against the manifest weight of the evidence, an appellate court must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'"State v. Tibbetts (2001), 92 Ohio St.3d 146, 163, 749 N.E.2d 226, 250
quoting State v. Getsy (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866,882. In order to do this, an appellate court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducingbelief.'" (Emphasis sic.) Thompkins at 387, 678 N.E.2d at 546 quoting Black's Law Dictionary (6 Ed. 1990) 1594.
In addition to the State's evidence against him referenced above, Waterbeck testified about his history with stray dogs. A stray dog had killed one of his poodles a few months before. Waterbeck had seen this particular dog in and around his yard menacing his remaining poodle. On the day in question, Waterbeck's son told him this dog was in the backyard. He went outside and saw the dog was in his poodle's doghouse. He thought this dog was attacking his poodle. Therefore, as the dog started to come out of the doghouse, he smacked it in the head with a pipe with a weight screwed on the end. He testified he did not want the dog to wake up and suffer, so he made sure the head was smashed by beating it to death. He did acknowledge the dog was alive and conscious when he was talking with Mrs. Cuevas.
In this case, there is no reason for the trier of fact to doubt the credibility of the witnesses since the witnesses agree on all the essential facts. Waterbeck beat this dog to death by repeatedly hitting it with a blunt object. The only question before the factfinder was whether he unnecessarily beat or needlessly killed the dog. In this case, both the type of injury inflicted and the manner in which the dog's death were caused point to the unnecessary nature of the beating and the needlessness in the dog's death. Waterbeck may have believed the dog was a danger to either himself or his dog. This does not mean he needed to beat the dog to death with a pipe. Waterbeck may have wanted to end the dog's suffering, but as this Court said in Tiber, "it would be reasonable that a person would retrieve the injured animal and attempt to get help for it instead of pursuing the animal with a shovel and beating it." Id. at 2. Because the facts of the case are such to establish a firm belief in the mind of the trier of fact that Waterbeck unnecessarily beat or needlessly killed the animal, his conviction was not against the manifest weight of the evidence.
As the State produced sufficient evidence to prove beyond a reasonable doubt that Waterbeck violated R.C. 959.13(A)(1), the trial court properly denied his Crim.R. 29(A) motion for acquittal. Likewise, the evidence presented was capable of producing the certainty required of a criminal conviction and accordingly was not against the manifest weight of the evidence. Waterbeck's first assignment of error is meritless.
In his second assignment of error, Waterbeck argues R.C. 955.28
precludes his conviction because it precludes prosecution for cruelty to animals if the animal which is killed or injured was a danger to him. Waterbeck raised this affirmative defense in closing arguments to the court.
"R.C. 955.28 provides an affirmative defense to a charge of cruelty to animals if a dog is chasing or approaching a person in a menacing manner." State v. Hurst (Mar. 12, 1999), Gallia App. No. 98CA08, unreported.
 "The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." State v. Melchior (1978), 56 Ohio St.2d 15, 381 N.E.2d 195, paragraph one of the syllabus.
The burden of going forward with the evidence of an affirmative defense and the burden of proof for an affirmative defense is upon the accused. R.C. 2901.05(A).
R.C. 955.28(A) provides:
 "[A] dog that is chasing or approaching [a person] in a menacing fashion or apparent attitude of attack * * * can be killed at the time of that chasing [or] approaching * * *. If, in attempting to kill such a dog, a person wounds it, he is not liable to prosecution under the penal laws which punish cruelty to animals."
Waterbeck testified that the German shepherd was "hostile, very hostile," that it was biting his dog into submission, and that it began to approach him. This testimony illustrates Waterbeck may have been able to avail himself of the affirmative defense if all he did was initially strike the dog until it was no longer a threat. By his own admission Waterbeck continued to beat the dog after it was unconscious. No reasonable mind would question whether the dog was approaching Waterbeck in a menacing fashion or apparent attitude of attack after the initial blow. An unconscious animal cannot menace. Waterbeck cannot avail himself of the affirmative defense found in R.C. 955.28(A). His second assignment of error is meritless.
Waterbeck asserts in his third assignment of error the trial court used an incorrect standard, specifically, he was not found guilty beyond a reasonable doubt. "It is axiomatic that the state must prove each and every element of an offense beyond a reasonable doubt." State v. Jones
(2001), 91 Ohio St.3d 335, 347, 744 N.E.2d 1163, 1178, citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Any lesser standard of proof would violate the Due Process Clause of theFourteenth Amendment of the United States Constitution. Id. It does not appear from the record the trial court used a lower standard of proof.
At the conclusion of the trial, the trial court found Waterbeck guilty of cruelty to animals "based upon substantial and credible testimony, direct evidence and circumstantial evidence." Waterbeck unpersuasively argues this illustrates the trial court used a lower standard of proof than beyond a reasonable doubt. Rather than describing the certainty of the finding of guilt, it is describing the basis upon which the trial court was making its finding of guilt. Although these are certainly related concepts, the presence of one does not negate the presence of the other.
For example, in the oft-cited case wherein the Ohio Supreme Court sets forth the standard for reviewing a sufficiency of the evidence argument,Jenks, supra, the court recognized the relationship between "beyond a reasonable doubt" and "substantial evidence".
 "It is also an elementary principle of law that when reviewing a criminal conviction, `* * * [t]his court's examination of the record at trial is limited to a determination of whether there was evidence presented, "which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." * * * Our review is thus confined to a determination of whether there was substantial evidence. * * *'" Id. at 263, 574 N.E.2d at 496, quoting State v. Eley (1978), 56 Ohio St.2d 169, 172, 10 O.O.3d 340, 341, 383 N.E.2d 132, 134.
To put it plainly, substantial evidence may, if believed, be sufficient to establish a defendant's guilt beyond a reasonable doubt. See id. at 279, 574 N.E.2d at 507. In this case, the trial court stated it based its finding of guilt upon substantial evidence. This was the proper thing for the trial court to do. The trial court did not use "substantial" evidence as its standard of proof. Waterbeck's third assignment of error is meritless.
Waterbeck's conviction was neither based upon insufficient evidence nor against the manifest weight of the evidence. He was not entitled to the affirmative defense found in R.C. 955.28(A). The trial court used the proper standard of proof when finding him guilty. For these reasons, Waterbeck's assignments of error are meritless and the decision of the trial court is affirmed.
Vukovich, P.J., and Waite, J., concurs.