[Cite as *State v. Bennett*, 2018-Ohio-3114.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| CLAYTICIA D. BENNETT | : | Case No. 17-CA-83 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County
                             Municipal Court, Case No. 17-CRB-
                             00643

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            August 3, 2018

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

J. MICHAEL KING                           ROBERT E. CESNER, JR.
Assistant Law Director                    456 Haymore Avenue North
City of Newark                            Worthington, OH 43081-2445
40 West Main Street
Newark, OH  43055

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant Clayticia D. Bennett appeals the August 10, 2017 judgement of conviction and sentence of the Municipal Court of Licking County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  In 2017, appellant resided in Thornville with her uncle and two teenage daughters. On February 23, 2017, appellant was out running errands while her daughters, uncle, and her 3 year-old Cane Corso dog, Pretty Girl, remained at home. While appellant was out, several children where in the neighborhood selling candy. When one of the children came to appellant's door, Pretty Girl crashed through the closed storm door of the home and bit the child, causing serious physical harm.

{¶ 3}  The dog warden designated the dog vicious, and appellant was subsequently charged with a violation of R.C. 955.22(C), failure to confine a vicious dog, a misdemeanor of the first degree.

{¶ 4}  Thereafter, counsel for appellant filed a motion to dismiss the complaint alleging it was fatally defective because it failed to allege a culpable mental state. Following a hearing on the matter, the trial court issued its judgment entry overruling the motion. The court found it well established that R.C. 955.22(C) requires no proof of culpability as it is a strict liability offense. Appellant filed a motion for reconsideration and the trial court rejected the same.

{¶ 5}  On October 5, 2017, in exchange for appellant's plea, the state amended the degree of the offense from a misdemeanor of the first degree to a misdemeanor of the fourth degree. Appellant then entered a plea of no contest, the trial court found her

guilty and convicted her. Appellant was sentenced to 30 days in jail, suspended, and placed on one year probation. The trial court additionally ordered the dog euthanized, and ordered appellant to pay restitution to the dog warden for the cost of boarding and euthanizing the animal.

{¶ 6} Appellant filed an appeal and the matter is now before this court for consideration.

I

{¶ 7} "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF FAILURE TO CONFINE HER DOG IN VIOLATION OF O.R.C. SECTION 955.22(C)(1) SOLELY UPON THE BASIS THAT SHE WAS THE OWNER OF A DOG THAT ATTACKED AND INJURED A CHILD DURING HER ABSENCE. SAID CONVICTION BASED UPON THE STRICT LIABILITY OF AN OWNER WITHOUT REGARD OF ANY EVIDENCE THAT SHE HAD FAILED TO EXERCISE DUE CARE AND ACTED RECKLESSLY AND HAD, TO THE CONTRARY, LEFT HER DOG CONFINED INSIDE HER RESIDENCE UNDER THE REASONABLE CONTROL OF SOME PERSON."

{¶ 8} In her sole assignment of error, appellant argues R.C. 955.22(C)(1)[1] does not impose strict liability. We disagree.

## Mens Rea

{¶ 9} Appellant contends the trial court erred in concluding R.C. 955.22(C) imposes strict liability. The statute states, in relevant part:

---

[1] Appellant's cites to R.C. 955.22(C)(1). However the complaint cited R.C.955.22(C) and then included the language for both sections (C)(1) and (C)(2). We will refer hereinafter to R.C. 955.22(C).

Except when a dog is lawfully engaged in hunting and accompanied by the

owner, keeper, harborer, or handler of the dog, no owner, keeper, or

harborer of any dog shall fail at any time to do either of the following:

(1) Keep the dog physically confined or restrained upon the premises of the

owner, keeper, or harborer by a leash, tether, adequate fence, supervision,

or secure enclosure to prevent escape;

 (2) Keep the dog under the reasonable control of some person.

{¶ 10} R.C. 2901.21(B) states:

When the language defining an offense does not specify any degree of

culpability, and plainly indicates a purpose to impose strict criminal liability

for the conduct described in the section, then culpability is not required for

a person to be guilty of the offense. The fact that one division of a section

plainly indicates a purpose to impose strict liability for an offense defined in

that division does not by itself plainly indicate a purpose to impose strict

criminal liability for an offense defined in other divisions of the section that

do not specify a degree of culpability.

{¶ 11} As the Supreme court of Ohio explained, two conditions must exist before

we may read recklessness into R.C. 955.22:

First, the "section" defining the offense must not specify "any degree of

culpability," meaning that the section does not already require proof of a

culpable mental state for any element of the offense in any division or subdivision. R.C. 2901.21(B); see also Johnson, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, at ¶ 31 ("R.C. 2901.21(B) requires us to examine the entire section defining the offense, not merely a clause or subsection"); *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 22 ("we need to determine whether the entire section includes a mental element, not just whether division (A)(6) includes such an element" [emphasis sic] ). Second, the section must not plainly indicate a purpose to impose strict liability. R.C. 2901.21.

{¶ 12}  *State v. Tolliver*, 140 Ohio St.3d 420, 2014-Ohio-3744, 19 N.E.3d 870, ¶ 15.

{¶ 13} Appellate districts across the state have found that R.C. 955.22 imposes strict liability. See *State v. Judge*, 1st Dist. Hamilton No. C-880317, 1989 WL 36676 (April 19, 1989), *1, *State v. Squires*, 108 Ohio App.3d 716, 718 671 N.E.2d 627 (2nd Dist. 1996), *State v. Thompson*, 3rd Dist. No. 7-16-10, 2017-Ohio-762, ¶ 14, *City of Middleburg Heights v. Troyan*, 8th Dist. Cuyahoga Nos. 105128 and 105131, 2017-Ohio-7073, ¶ 17-18, *State v. Miller*, 9th Dist. Wayne No. 2820, 1994 WL64338 (Feb. 23, 1994), *1, *State v. Campbell*, 10th Dist. Franklin App. No. 08AP-816, 2009-Ohio-3615, ¶ 26.

{¶ 14} In *See State v. Rife,* 10th Dist. Franklin No. 99AP-981, 2000 WL 757259, *3 (June 13, 2000), our colleagues in the 10th District Court of Appeals examined R.C 955.22(D), and found the statute was enacted to "promote public safety." The court went on to explain:

* * *Ownership of vicious and dangerous dogs poses a threat of harm to the public. See *State v. Anderson* (1991), 57 Ohio St.3d 168, 170-171, 566 N.E.2d 1224. Vicious and dangerous dogs have been causing an increasing number of fatalities and serious injuries to people. *State v. Robinson* (1989), 44 Ohio App.3d 128, 129, 541 N.E.2d 1092. Because of the potential harm caused by vicious and dangerous dogs, trial courts have the authority to order such dogs "humanely destroyed" in situations where the owner fails to properly confine and restrain the dogs. R.C. 955.99(F) and (G). As well, owners of vicious dogs are required to obtain a minimum of $50,000 in insurance to cover liabilities stemming from such dogs. R.C. 955.22(E). Thus, by requiring the owners of vicious and dangerous dogs to confine and restrain their dogs, the Ohio Legislature is using its police powers to minimize potential harm to the public. See *Anderson,* at 170, 566 N.E.2d 1224 (recognizing that the state retains great power to regulate and control the ownership of dogs to protect the public).

Statutes enacted for the purpose of promoting the safety, health or well-being of the public are generally meant to be enforced under a strict liability standard. *Middletown v. Campbell* (1990), 69 Ohio App.3d 411, 415, 590 N.E.2d 1301, quoting *Morissette v. United States* (1952), 342 U.S. 246, 255-256, 72 S.Ct. 240, 96 L.Ed. 288; see, also, *State v. Buehler Food Markets* (1989), 50 Ohio App.3d 29, 30, 552 N.E.2d 680 (noting that the more serious the consequences of violating a statute are to the public, the more likely the legislature meant to impose liability without fault). Strict liability is

considered amenable to such public welfare statutes because an individual covered under the statute is in a position to prevent the offense with "no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his [or her] responsibilities." *Campbell*, at 416, 590 N.E.2d 1301, quoting *Morissette*, at 246; see, also, *Campbell*, at 416, 590 N.E.2d 1301, quoting *Flint v. Ohio Bell Tel. Co.* (1982), 2 Ohio App.3d 136, 137, 440 N.E.2d 1244 (noting that, in Ohio, intent is not required in statutes where, "because of the substantial and significant public interest involved, the accused had a duty to ascertain the facts of the violation").

As well, the Ohio Legislature's intent to impose strict criminal liability on a public welfare statute is established by the statute's failure to refer to any culpable mental state and its containing the format "no person shall." *State v. Schlosser* (May 24, 1996), Montgomery App. No. 14976, unreported, cited with approval in *Schlosser*, at 334, 681 N.E.2d 911; see, also, *State v. Shaffer* (1996), 114 Ohio App.3d 97, 103, 682 N.E.2d 1040. Here, R.C. 955.22(D) makes no reference to any requisite mens rea and begins by stating, "[n]o [owner] of a dangerous or vicious dog shall fail to do either of the following."

We acknowledge appellant's contention that our decision should turn on whether appellee is able to prove guilty knowledge of a criminal defendant. In making this argument, appellant relies on the Ninth District Court of Appeals' decision in *Buehler Food Markets*. In *Buehler Food Markets*, the

court noted that a difficulty in proving culpability of an offense is a factor to be considered in determining whether the Ohio Legislature intended to impose strict criminal liability on an offense. *Id.* at 31, 552 N.E.2d 680. While we recognize that a difficulty in proving culpability of an offense is a factor weighing in favor of strict criminal liability, we find no case law mandating that our decision be based primarily on such an assessment. Indeed, in *Schlosser*, the Ohio Supreme Court made no such assessment when deciding that Ohio's RICO statute imposes strict criminal liability on offenders of the statute. *Schlosser*, at 333, 681 N.E.2d 911.

As well, we find persuasive that other courts have held that R.C. 955.22(C) imposes strict criminal liability on the owner of any dog who fails to restrain or confine a dog to the owner's premises. See, e.g., *State v. Squires* (1996), 108 Ohio App.3d 716, 718-719, 671 N.E.2d 627; *State v. Miller* (Feb. 23, 1994), Wayne App. No. 2820, unreported; *State v. Judge* (Apr. 19, 1989), Hamilton App. No. C-880317, unreported. The courts recognize that R.C. 955.22(C) was enacted to minimize potential injury to persons and property presented by roaming dogs. See *Squires*, at 719, 671 N.E.2d 627; *Miller*, and *Judge*. As stated in *Squires*, R.C. 955.22(C) imposes a duty on a dog's owner "to keep it confined, and it makes the owner criminally liable for a breach of that duty regardless of how it came about." *Squires*, at 719, 671 N.E.2d 627. Our opinion today is further cognizant of the Ohio Legislature's efforts to protect the public from potential harm caused by roaming dogs, specifically in this case, vicious and dangerous dogs.

Thus, the language of R.C. 955.22(D), and its statutory and policy considerations, lead us to conclude that the Ohio Legislature intended to impose strict criminal liability on owners who fail to restrain or confine their vicious or dangerous dogs as specified in the section.

{¶ 15} We agree with the foregoing analysis, and find R.C. 955.22(C) imposes strict liability. Here, although appellant left Pretty Girl inside her home upon her departure from the home, the dog was able to escape the home in her absence. As stated by appellee during the plea hearing, Pretty Girl "did in fact come through a * * * storm door." and cause serious injury to the victim. Change of Plea hearing at 6. Appellant did not object to the facts as stated by appellee. *Id* at 7. Because the dog was able to "come through" a storm door, appellant failed to comply with the requirements of R.C. 955.22(C).[2]

{¶ 16} Appellant also argues that R.C. 955.22(C) permits the state to arbitrarily prosecute the owner, harborer, or keeper of a dog for a violation of R.C 955.22, and is thus unconstitutional as applied to appellant. We disagree.

{¶ 17} "In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is]

---

[2] Although appellant offers a theory that the victim perhaps opened the door permitting Pretty Girl to escape, we may not consider this theory as appellant entered a no contest plea. " 'The essence of the "no contest" plea, is that the accused cannot be heard in defense. Thus any statement by him must be considered as in mitigation of penalty.' " (Citations omitted.) *State ex rel. Stern v. Mascio*, 75 Ohio St.3d 422, 424, 662 N.E.2d 370 (1996). As a result, while "the trial court retains discretion to consider a defendant's contention that the admitted facts do not constitute the charged offense, the defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense. * * * By pleading no contest, the defendant waives his right to present an affirmative defense." (Citations omitted.) *Id.* "A plea of no contest is not an admission of guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint. Crim.R. 11(B)(1) and (2)." Id. at 423.

unconstitutional.' " *State v. Carrick*, 131 Ohio St.3d 340, 2012–Ohio–608, 965 N.E.2d 264, at ¶ 16, citing *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting). Thus, an as-applied challenge focuses on the particular application of the statute.

{¶ 18} In *Stuper v. Young*, 9th Dist. No. No. 20900, 2002-Ohio-2327 at ¶13, the 9th District explained:

> An owner is the person to whom the dog belongs, while the keeper is the person who has physical control over the dog. *Flint v. Holbrook* (1992), 80 Ohio App.3d 21, 25, 608 N.E.2d 809. In determining whether a person is a harborer of the dog within the meaning of R.C. 955.28, the focus shifts from possession and control of the dog to possession and control of the premises where the dog lives. *Godsey v. Franz* (Mar. 13, 1992), 6th Dist. No. 91WM000008. "[A] harborer is one who has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence." (Emphasis omitted.) *Flint*, 80 Ohio App.3d at 25, 608 N.E.2d 809. With respect to whether a landlord can be held liable as a harborer under R.C. 955.28(B) for injuries inflicted by a tenant's dog, the plaintiff must prove that the landlord permitted or acquiesced in the tenant's dog being kept in the common areas or areas shared by the landlord and tenant. *Godsey*, supra.

{¶ 19} First, as noted above, appellant did not challenge appellee's statement of facts during the change of plea hearing. Appellee stated appellant was the "owner, keeper, or harborer" of the dog on the date of the offense. Further, there is no evidence on the record to indicate appellee arbitrarily charged appellant. Appellant does not challenge the fact that she was Pretty Girl's owner. Although the dog was left at home where allegedly appellant's uncle and children were present, there is no evidence that the dog was under the control of any of the three. Indeed the dog was able to go through a storm door and attack the victim. Finally, there was no evidence presented as to who owned or controlled the property where the dog lived.

{¶ 20} Based on the record before us, we decline to find R.C. 955.22(C) is unconstitutional as applied to appellant.

{¶ 21} The assignment of error is overruled.

{¶ 22} The judgment of the Licking County Municipal Court is affirmed.


By Wise, Earle, J.

Gwin, P.J. and

Delaney, J. concur.


EEW/rw